# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

SPENCER JERROD BELL,

        Plaintiff,

    v.

FELISHA BROWN; FAYE CLIFTON; JANE
DOE; JOHN DOE; EMANUEL COUNTY
JAIL; EMANUEL COUNTY JAIL
MEDICAL DEPARTMENT; MAC LAMB;
WAYNE MCKENNY; MAC RINER; and
SHERIFF TYSON STEVENS,

        Defendants.

CIVIL ACTION NO.: 6:17-cv-12

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Central State Prison in Macon, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while housed at Emanuel County Jail. Plaintiff also filed a Motion to Add a Defendant, (doc. 15). For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion to Add a Defendant.[1] (Doc. 15.)

In addition, the Court has conducted the requisite frivolity review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. For the reasons that follow, I **RECOMMEND** that the Court **DISMISS**: Plaintiff's official capacity claims against all Defendants; all claims against Emanuel County Jail and Emanuel County Jail Medical Department; and all claims against Defendants John Doe and Jane Doe. The Court should also **DISMISS WITHOUT**

---

[1] The Court **DIRECTS** the Clerk of Court to add Wayne McKenny to the docket of this case as a Defendant.

**PREJUDICE** Plaintiff's Eighth Amendment deliberate indifference to medical needs claims pertaining to Plaintiff's gastrointestinal illness.

However, Plaintiff has plausibly stated claims that Defendants Mac Lamb, Wayne McKenny, and Mac Riner used excessive force against him in violation of the Eighth Amendment. He also plausibly alleged that Defendants Felisha Brown, Faye Clifton, Lamb, Riner, and Sheriff Tyson Stevens violated his Eighth Amendment rights by disregarding his serious medical needs. These claims shall proceed. Consequently, the Court hereby **ORDERS** that the Amended Complaint, (doc. 18), and this Order be served on Defendants Brown, Clifton, Lamb, McKenny, Riner, and Stevens. The Court provides additional instructions to Plaintiff and Defendants pertaining to the future litigation of this action, which the parties are urged to read and follow.

## BACKGROUND[2]

Plaintiff asserts he was assaulted by Emanuel County Jail staff and a "trustee inmate," Wayne McKenny, on September 13, 2016, and that Defendants subsequently ignored his medical needs arising from that assault. (Doc. 18.)

Defendant Lamb threatened Plaintiff with a taser, kneed Plaintiff above his left eye, and "pressured" the right side of Plaintiff's face into the ground, all causing substantial swelling. (Id. at p. 1–2.) Plaintiff alleges that Defendant Mac Riner and Inmate Wayne McKenny

---

[2]  The below recited facts are taken from Plaintiff's Amended Complaint, (doc. 18), and are accepted as true, as they must be at this stage. Generally, "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case." Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007). Moreover, Plaintiff does not refer to or even cite his original complaint in his most recent complaint. Cf. Hall v. Louisiana, Civil Action NO. 12-00657-BAJ-RLB, 2014 WL 1431671, at *2 (M.D. La. Apr. 14, 2014) (citing Stewart v. City of Houston Police Dept, 372 F. App'x 475, 478 (5th Cir. 2010)) (when a plaintiff's subsequent complaint refers to, adopts, or incorporates the plaintiff's original complaint, "it cannot be said that the subsequent complaint[ ] superceded (sic) the original complaint."). Accordingly, the Court will only assess those claims asserted in Plaintiff's Amended Complaint as that is the operative pleading in this case.

participated in this assault. (Id.) Plaintiff states that McKenny forced Plaintiff's hands behind his back and forced his shoulder into the ground while handcuffing him. (Id.) Plaintiff avers he was also "handcuffed severely tight[ly]" and "thrown in a [ ] chair . . . in a room by [him]self" for no apparent reason. (Id. at p. 1.) As a result, Plaintiff lost sensation in his hands and his shoulders. (Id.) During the time in which he was handcuffed to the chair, Defendants Mac Lamb, Faye Clifton, Mac Riner, and Felisha Brown "peeped in [the room] occasionally laughing" while Plaintiff "cri[ed], yell[ed], and beg[ged] them to . . . loosen [the] cuffs" and take him to medical. (Id.)

Shortly after the assault, Defendants Riner and Brown escorted Plaintiff to punitive segregation. During this escort, Plaintiff showed Riner and Brown his wounds and requested medical attention again. (Id.) Riner and Brown responded there was no medical staff at the jail and that they would not send him to an outside hospital. (Id.)

Plaintiff was confined in punitive segregation from September 13, 2016 to September 15, 2016. (Id.) During this time, he asked for medical treatment for his "pain and wounds" several times but received no medical attention. Plaintiff asked for medical treatment multiple times, but Defendants Riner and Brown refused to provide him any medication and, instead, told Plaintiff to stop whining. (Id.) On September 13, 2016, Plaintiff asked an "Officer Chris" (whom Plaintiff has not named as a Defendant in this case) for ibuprofen, and Officer Chris stated that he could not give Plaintiff ibuprofen until he asked his supervisor. (Id.) Over the next two days in segregation, Plaintiff saw Officer Chris as well as Defendant Riner several times during their "routine rounds." (Id.) While Officer Chris gave Plaintiff some ibuprofen, Defendant Riner refused to given Plaintiff any medical attention and told Plaintiff to stop whining. (Id.)

On September 19, 2016, Plaintiff transitioned from punitive segregation to administrative segregation. (Id. at p. 2.) Following his move to administrative segregation, two inmates attacked Plaintiff.[3] (Id.) After this attack, Plaintiff saw Defendant Faye Clifton and told her that his feet were swollen, his wrists were badly wounded, and he still had no feeling in his hands. (Id.) Defendant Clifton told Plaintiff that he should not have been acting up, that a doctor was not present, and refused to provide him medical treatment. (Id.)

On or around September 19, 2016, Plaintiff eventually saw a doctor at the jail. (Id.) Plaintiff showed the doctor injuries to his wrists, shoulders, feet, and knees and told her that he could not feel his hands. (Id.) He requested that the doctor examine his feet and give him an x-ray, but she responded that there was nothing she could do and that his nerves would come back. (Id.) The doctor then asked Plaintiff to step outside. Defendant Clifton was present during Plaintiff's trip to medical, and she "blurted out [']we not about [sic] to send you to an outside Doctor.[']" (Id.) After Plaintiff stepped outside, Defendant Clifton discussed his medical condition with the doctor, and eventually Defendant Clifton provided Plaintiff two Tylenol and two packs of antibiotic ointment. (Id.)

Plaintiff maintains that there is not a "qualified person" to administer medicine and make medical decisions at the jail. (Id.) Instead, he states that the medical administrator, the Warden, and Sherriff Stevens maintain a policy of having "inadequately trained" jailers make decisions regarding inmates' medical needs. (Id.)

---

[3] Even construing Plaintiff's Amended Complaint liberally, it does not appear that he alleges that any named Defendants are responsible for failing to intervene to prevent this attack or are otherwise liable for the attack. However, even if Plaintiff does intend to present such claims in this action, he may not do so. This purported claim did not arise from the same transaction or occurrence as Plaintiff's excessive force claim and his related deliberate indifference claims. See Fed. R. Civ. P. 20(a). See also Skillern v. Ga. Dep't of Corr., 379 F. App'x 859, 860 (11th Cir. 2010) (affirming dismissal where prisoner plaintiff did not show that that the claims against defendants "arose out of the same transaction, occurrence, or series of transactions or occurrences but instead claimed that many different transactions and occurrences were related because they showed the defendants' overall indifference to his medical conditions").

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard,

this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I. Motion to Add Defendant

Plaintiff filed a Motion to Add Defendant, seeking to add excessive force claims against inmate Wayne McKenny. Under Federal Rule of Civil Procedure 15(a), a party may amend a complaint "once as a matter of course at any time before a responsive pleading is served." The Eleventh Circuit has made clear that the Prison Litigation Reform Act ("PLRA") does not

change this right to amend. <u>Brown v. Johnson</u>, 387 F.3d 1344, 1349 (11th Cir. 2004) ("We agree with the majority of circuits that the PLRA does not preclude the district court from granting a motion to amend."). Federal Rule of Civil Procedure 15(a)(2) further directs that "[t]he court should freely give leave [to amend pleadings] when justice so requires."

However, "[t]he policy of generously permitting amendments under Rule 15(a) primarily involves new theories of liability against existing Defendants. The decision of whether to allow a Plaintiff to join additional defendants is governed by a different standard. That decision is left to the discretion of the district court." <u>Anderson v. Tyus</u>, No. 4:06-CV-4, 2008 WL 4525143, at *2 (N.D. Fla. 2008) (citing <u>Dean v. Barber</u>, 951 F.2d 1210, 1215 (11th Cir. 1992)). In <u>Dean v. Barber</u>, 951 F.2d 1210, 1215–16 (11th Cir. 1992), the Eleventh Circuit Court of Appeals held that the district court abused its discretion by denying plaintiff's motion to add a "John Doe" defendant when it was possible that discovery would reveal the identity of that defendant. However, the Court held that the district court did not abuse its discretion in denying plaintiff's motion to add a defendant when addition of the defendant would be futile under Rule 15(a). <u>See id.</u> (finding that district court did not abuse discretion in denying plaintiff's motion to add defendant when plaintiff's allegations against that defendant failed to state a claim); <u>See also Lavender v. Kearney</u>, 206 F. App'x 860, 865 (11th Cir. 2006) (same).

Here, Plaintiff seeks to add another inmate as a Defendant. In order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." <u>Hale v. Tallapoosa Cty.</u>, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." <u>Id.</u> The state-actor requirement traditionally precludes suit

against a private party under Section 1983, because a private party may qualify as a state actor for Section 1983 purposes only in "rare circumstances." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). The Eleventh Circuit Court of Appeals recognizes that a private entity may be liable as a "state actor" for a constitutional violation only in the following circumstances: (1) "the State has coerced or at least significantly encouraged the action alleged to violate the Constitution"; (2) "the private parties performed a public function that was traditionally the exclusive prerogative of the State"; or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[ ]." Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001) (alterations in original) (quoting NBC, Inc. v. Commc'ns Workers of Am., 860 F.2d 1022, 1026–27 (11th Cir. 1988)).

Ordinarily, an inmate cannot sustain Section 1983 claims against a fellow inmate under this standard. Here, however, Plaintiff has alleged that inmate McKenny was a "trustee" inmate who carried out the orders of correctional officers. Plaintiff alleges that inmate McKenny acted in concert with and at the direction of Defendants Lamb and Riner during his assault by "put[ting] [Plaintiff's] hands behind [his] back [and] twisting [Plaintiff's] shoulder to handcuff [him] . . . caus[ing] substantial bruises and pain to [Plaintiff's] right shoulder." (Doc. 15, p. 1.) Under these facts, Plaintiff has plausibly alleged that "the State . . . significantly encouraged the action alleged to violate the Constitution." Therefore, the Court finds it appropriate to permit Plaintiff to assert claims against inmate McKenny in this action. Accordingly, the Court **GRANTS** Plaintiff's Motion to Amend and **DIRECTS** the Clerk of Court to add Wayne McKenny to the docket of this case as a Defendant.

## II.    Dismissal of Official Capacity Claims

It is not clear if Plaintiff intends to sue Defendants in their individual and official capacities.  However, Plaintiff cannot sustain Section 1983 claims for monetary relief against Defendants in their official capacities.  States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty.  Alden v. Maine, 527 U.S. 706, 712–13 (1999).  Section 1983 does not abrogate the well-established immunities of a state from suit without its consent.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).  Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983.  Id. at 71.  Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections.  Accordingly, the Eleventh Amendment immunizes Defendants from suit for monetary damages in their official capacity.  See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989).

Additionally, Plaintiff cannot maintain any claims for injunctive or declaratory relief as he is no longer housed at the Emanuel County Jail.  An inmate's claim for injunctive relief against prison officials is subject to dismissal for mootness when the prisoner is transferred to another prison and is no longer subject to the condition for which injunctive relief is sought. Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (per curiam); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam) ("Absent class certification, an inmate's claim for injunctive relief and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.").

For all of these reasons, the Court should **DISMISS** all claims against all Defendants in their official capacities.

**III.    Claims Against Emanuel County Jail and Emanuel County Jail Medical Department**

As discussed above, in order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements.  First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995).  Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law."  Id.  While local governments qualify as "persons" under Section 1983, state agencies and penal institutions are generally not considered legal entities subject to suit.  See Grech v. Clayton Cty., 335 F.3d 1326, 1343 (11th Cir. 2003).  Consequently, a county jail and its medical department are not viable defendants under Section 1983.  Williams v. Chatham Cty. Sherriff's Complex, Case No. 4:07-cv-68, 2007 WL 2345243, at *1 (S.D. Ga. Aug. 14, 2007) ("The county jail, however, has no independent legal identity and therefore is not an entity that is subject to suit under Section 1983.").  Accordingly, the Court should **DISMISS** Plaintiff's claims against Emanuel County Jail and the Emanuel County Jail Medical Department.

**IV.    Claims Against Defendants John Doe and Jane Doe**

Plaintiff named John Doe and Jane Doe as Defendants in his original Complaint. However, he does not name either of these defendants in his Amended Complaint.  Additionally, he does not make any allegations against these defendants.  Thus, it appears that Defendant has abandoned his claims against these unknown defendants.  Moreover, "[a]s a general matter, fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010); see also Fitzpatrick v. Ga. Dep't of Corr., No. CV 612–022, 2012 WL 5207474, at *8 (S.D. Ga. Sept. 12, 2012), R & R adopted as modified, No. CV 612–022, 2012 WL 5207472 (S.D. Ga. Oct. 22, 2012).  A limited exception to this rule exists "when the

plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage,'" and thus discovery would uncover the unnamed defendant's identity. Richardson, 598 F.3d at 738 (quoting Dean v. Barber, 951 F.2d 1210, 1215–16 (11th Cir.1992)); Daleo v. Polk Cty. Sheriff, No. 8:11–CV–2521–T–30 TBM, 2012 WL 1805501, at *4–5 (M.D. Fla. May 17, 2012) (citing Dean, 951 F.2d at 1215–16). Plaintiff does not name, much less make specific allegations against Jane Doe and John Doe in his operative Amended Complaint. Accordingly, the Court should **DISMISS** all claims against these Defendants.

## IV.     Excessive Force Claims[4]

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that

---

[4] It appears Plaintiff was serving a sentence at the time of the incidents giving rise to his Complaint. Thus, the Court assesses his excessive force and deliberate indifference to medical needs claims under the Cruel and Unusual Punishment Clause of the Eighth Amendment, which applies to convicted prisoners. However, pretrial detainees' rights exist under the Due Process Clause of the Fourteenth Amendment. Morrison v. City of Atlanta, 614 F. App'x 445, 448–49 (11th Cir. 2015). If the Fourteenth Amendment applies to Plaintiff's claims, he states excessive force and medical needs claims under the applicable standards.

the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Plaintiff plausibly alleges that Defendants Lamb, Riner, and McKenny used excessive force against him in violation of the Eighth Amendment. He alleges that Defendant Lamb "knee[d] [him] in the face behind a door trying to hide from [the] camera, [threw him] to the ground and pressured [the] right side of [his] face in the ground causing substantial swelling." (Doc. 18, p. 2.) Plaintiff further alleges that inmate McKenny and Riner participated in the assault by forcibly handcuffing him which caused substantial bruises and pain to Plaintiff's wrists and right shoulder. (Id.) Even if Plaintiff did not suffer a severe injury, he plausibly alleges that Defendants Lamb, Riner, and McKenny exercised force against him without any provocation or other reason to do so. Under these facts, Defendants violated the Eighth Amendment by exercising force sadistically and maliciously for the purpose of causing harm, as opposed to restoring or maintaining order. See Hudson v. McMillian, 503 U.S. 1 (1992) (finding that correctional officers violated Eighth Amendment by placing inmate in handcuffs and punching him while another officer held the inmate down, even if prisoner did not suffer significant injury, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are violated."). This claim against these three Defendants survives frivolity review.

## V.  Claims of Deliberate Indifference to Plaintiff's Medical Needs

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care."

<u>Farmer</u>, 511 U.S. at 832.  Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted).  Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights.  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981).  The Constitution does not mandate comfortable prisons.  <u>Id.</u>  Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities." <u>Id.</u> at 347.  However, "[c]ontemporary standards of decency must be brought to bear in determining whether a punishment is cruel and unusual." <u>Bass v. Perrin</u>, 170 F.3d 1312, 1316 (11th Cir. 1999).

In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate.  <u>Farmer</u>, 511 U.S. at 828.  However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting <u>Estelle</u>, 429 U.S. at 105).  Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Hill v. DeKalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference to medical care claim, a prisoner must overcome three obstacles.  The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1326 (11th Cir. 2007).  A medical need is serious if it "'has been diagnosed by a physician

as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. "The meaning of 'more than gross negligence' is not self-evident[.]" Id. Only when deliberate indifference to an inmate's serious medical needs is demonstrated to be "repugnant to the conscience of mankind" or offensive to "evolving standards of decency" will it give rise to a valid claim of mistreatment under the Eighth Amendment. Id.

Plaintiff contends he was handcuffed so tightly that he lost sensation in his hands and shoulders and had visible wounds on his hands. Additionally, Plaintiff alleges that his face was swollen due to having been kneed in the eye and his face rubbed into the ground during the assault. The Eleventh Circuit Court of Appeals has recognized that these superficial injuries from handcuffing do not qualify as "serious" medical needs. See Hill, 40 F.3d at 1188, n.22, *overruled in part on other grounds by* Hope v. Pelzer, 536 U.S. 730 (2002) (stating that a delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation" and citing favorably Wesson v. Oglesby, 910 F.2d 278, 284 (5th. Cir. 1990) for the proposition that "a state prisoner's swollen, bleeding wrists from handcuffs that were too tight 'do not constitute such a "serious medical need" that any minor delay caused by [prison officials] in delivering [inmate] to the care of medical personnel could be construed as "deliberate indifference[.]"'"). However, construing Plaintiff's Complaint

liberally, he plausibly alleges more than superficial injuries.  He contends that he lost feeling in his hands for at least several days after the assault and that he continued to suffer pain to his wrists, shoulders, feet, and knees for days after the assault.  Plaintiff alleges that he was crying due to his injuries and that he repeatedly requested medical care.  Thus, his injuries were so obvious that even a lay person would easily recognize the necessity for medical attention.  Therefore, Plaintiff has plausibly alleged that he had a serious medical need arising from his assault by Defendants Lamb, Riner, and McKenny.

Plaintiff also alleges that Defendants Lamb, Clifton, Riner, and Brown refused to provide him medical care for his serious medical needs.  He contends that all of these Defendants laughed at him while he was in segregation and ignored his request to be seen by medical.  Additionally, he contends that Riner and Brown told him that he could not be seen by medical when transporting him to segregation.  While Plaintiff was in segregation for two days, Defendant Riner repeatedly refused to give Plaintiff medical treatment and told him to quit whining.  Further, after his transfer from segregation and the attack by fellow inmates which exacerbated Plaintiff's injuries, Defendant Clifton refused to provide Plaintiff medical treatment.  When Plaintiff was eventually seen in the medical department, Defendant Clifton interfered with his medical treatment.

Accepting Plaintiff's allegations as true, as the Court must at this stage, he has plausibly stated that Defendants Lamb, Clifton, Riner, and Brown refused to provide him medical care for his serious medical needs arising from the assault by Defendants Lamb, Riner, and McKenny.  These claims survive frivolity review.

Plaintiff also alleges that Defendant Riner ignored his request for gastrointestinal medication when Plaintiff was confined in punitive segregation.  (Doc. 18, p. 2.)  Additionally,

Plaintiff alleges Defendant Clifton provided him only an anti-diarrheal and one of his prescribed medications in response to this request. (Id.) However, because these claims do not arise from the same transaction or occurrence as his excessive force claim and the deliberate indifference claims arising therefrom, Plaintiff may not pursue these claims in the same action. See Fed. R. Civ. P. 20(a). Consequently, the Court should **DISMISS WITHOUT PREJUDICE** Plaintiff's deliberate indifference claims regarding his gastrointestinal medical problems. If Plaintiff wishes to pursue these claims, he must do so in a separate action.

## VI. Supervisory Liability Claims against Defendant Stevens

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of *respondeat superior*. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

Here, Plaintiff alleges that Defendant "Stevens . . . [does not] have a qualified physician [at the jail and] instead has jailers [ ] administer medicine and decide treatment." (Doc. 18, p. 2.) He further alleges that "inadequately trained jailers [are] directed to use their own judgment

about the seriousness of [detainees'] medical needs." (Id.) Accordingly, Plaintiff plausibly alleges that Defendant Stevens has instituted a custom or policy that could result in the violation of constitutional rights at the jail. Additionally, as discussed above, Plaintiff has alleged that his Eighth Amendment rights were actually violated as a result of this policy. Accordingly, Plaintiff can sustain his supervisory liability claim against Defendant Stevens.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion to Add a Defendant. (Doc. 15.) In addition, I **RECOMMEND** that the Court **DISMISS**: Plaintiff's official capacity claims against all Defendants; all claims against Emanuel County Jail and Emanuel County Jail Medical Department; and all claims against Defendants John Doe and Jane Doe. The Court should also **DISMISS WITHOUT PREJUDICE** Plaintiff's Eighth Amendment deliberate indifference to medical needs claims pertaining to Plaintiff's gastrointestinal illness. However, Plaintiff's excessive force claims against Defendants Mac Lamb, Wayne McKenny, and Mac Riner and his deliberate indifference claims against Defendants Felisha Brown, Faye Clifton, Lamb, Riner, and Sheriff Tyson Stevens shall proceed. Consequently, the Court hereby **ORDERS** that the Amended Complaint, (doc. 18), and this Order be served on Defendants Brown, Clifton, Lamb, McKenny, Riner, and Stevens.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28

U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.  Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND DEFENDANTS

Plaintiff's allegations, when read in a light most favorable to him, arguably state colorable claims for relief against Defendants Lamb and McKenny for violations of his Eighth Amendment rights.  Consequently, a copy of this Order and Plaintiff's Complaint shall be served upon Defendants Lamb and McKenny by the United States Marshal without prepayment of costs.  The Court also provides the following instructions to the parties regarding the remaining claims and Defendants that will apply to the remainder of this action and which the Court urges the parties to read and follow.

# INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis,* the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the

witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

**INSTRUCTIONS TO PLAINTIFF**

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Failure to do so may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq.* The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  See Fed. R. Civ. P. 33.  Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as Defendants.  Interrogatories are not to contain more than twenty-five (25) questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the Court may dismiss it for want of prosecution.  Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants.  Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the

pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by

reliance on the conclusory allegations contained within the complaint. Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 11th day of August, 2017.

_____

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA