IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| SPENCER JEROD BELL, | |
| Plaintiff, | CIVIL ACTION NO.: 6:17-cv-12 |
| v. | |
| MATT LAMB; SHERIFF TYSON STEPHENS; DEWAYNE MCKINNEY; MATT RINER; FELICIA BROWN; and FAYE CLAYTON, | |
| Defendants. | |

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on the Motion for Summary Judgment filed by Defendants Brown, Clayton, Lamb, Riner, and Stephens.[1]  Doc. 64.  For the reasons set forth below, I **RECOMMEND** the Court **GRANT** Defendants' Motion and **DISMISS** Plaintiff's Complaint in its entirety, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Plaintiff *in forma pauperis* status on appeal.

**PROCEDURAL HISTORY**

Plaintiff filed a Complaint on December 27, 2016 in the Middle District of Georgia under 42 U.S.C. § 1983, and the case was subsequently transferred to this District.  Docs. 1, 7.  In his

---

[1] The Court **DIRECTS** the Clerk of Court to amend the docket to reflect the party's proper name, "Dewayne McKinney."  Doc. 50 at 1–3.  Defendant McKinney was served on July 20, 2018.  Id. Defendant McKinney attached to his waiver of service a note stating, "I Dewayne A. McKinney, have no awareness and I'm not able to bring to mind any incident or occurrence that happened on September 13, 2016 with ANY inmate at that time.  I'm unaware as to who was doing what because I was an inmate as well, locked up, in the place where I should be.  I was no where I shouldn't have been on that date."  Id. It does not appear that Defendant McKinney has participated in this litigation in any way since returning his waiver of service.

initial Complaint, Plaintiff brought claims against Matt Lamb, Felicia Brown, Faye Clifton, and Matt Riner.  Doc. 1 at 1.  Plaintiff later added Sheriff Tyson Stephens and Dewayne McKinney as Defendants.  Docs. 10, 14, 15, 20.  The Court completed its requisite frivolity review, allowing claims for excessive force against Defendants Lamb, McKinney, and Riner to proceed.  Docs. 21, 29.  The Court also allowed claims for deliberate indifference to serious medical needs against Defendants Brown, Clayton, Lamb, Riner, and Stephens to proceed.  Id.  Defendants Brown, Clayton, Lamb, Riner, and Stephens now move for summary judgment as to Plaintiff's claims.  Doc. 64.

## BACKGROUND[2]

During the relevant time period, Plaintiff was an inmate at the Emanuel County Jail. Doc. 1 at 1; Doc. 64-2 at 1.  On September 13, 2016, Plaintiff and Defendant Clayton began arguing about various matters.  Doc. 64-2 at 1; Doc. 64-9 at 14–19.  Defendant Clayton then called Defendant Lamb for assistance.  Doc. 64-2 at 1.  Defendant Lamb arrived, brandishing a taser.  Doc. 64-9 at 14–19.  After Defendant Lamb arrived, the argument escalated, and Plaintiff became increasingly recalcitrant.  Doc. 64-2 at 2.  Defendant Lamb instructed Plaintiff

---

[2]  Pursuant to Local Rule 56.1, upon any motion for summary judgment, the parties are required to file a statement of undisputed material facts, with each fact being supported by a citation to the record. All material facts set forth by the moving party will be deemed admitted unless controverted by a statement served by the opposing party.  Local R. 56.1.  In support of their motion for summary judgment, Defendants properly filed a Statement of Undisputed Facts, with each fact supported by a citation to the record.  Doc. 64-2.  Plaintiff did not respond to Defendants' Statement; instead, Plaintiff filed a brief in response to Defendants' Motion for Summary Judgment, which includes a one-paragraph "Statement of Facts," unsupported by any citations to the record.  Doc. 67 at 2.  Plaintiff's filing does not appear to dispute any facts alleged in Defendants' Statement of Undisputed Facts (aside from one issue regarding exhaustion of administrative remedies, addressed elsewhere in this Order and Report). Thus, the facts as set forth in Defendants' Statement of Undisputed Facts are deemed admitted. Nonetheless, the Court construes all facts and draws all reasonable inferences in the light most favorable to Plaintiff, the non-moving party, as it must.  See Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016).

he needed to go to a new cell assignment. Doc. 64-3 at 1;[3] Doc. 64-9 at 14–19. Plaintiff repeatedly questioned Defendant Lamb's motivations for the relocation and resisted Defendant Lamb's attempts to relocate him to a new cell. Doc. 64-9 at 16–18. While this was occurring, several other inmates were nearby and unsecured. Id. at 20.

In the midst of their argument, Defendant Lamb placed his hands on Plaintiff, either to physically direct Plaintiff to the other cell block or to restrain Plaintiff. Id. at 33–34. Plaintiff grabbed a nearby cell door handle to continue resisting Defendant Lamb's efforts. Id. Defendants Lamb and McKinney (another inmate) then subdued Plaintiff by forcing him to the ground. Id. at 19–20 (testifying that McKinney was a trustee). The takedown occurred in one single motion. Id. at 20. Ultimately, Defendants forced Plaintiff's hands behind his back, over Plaintiff's resistance, and placed cuffs on Plaintiff. Plaintiff admits he was angry and resisted the officers' efforts to cuff him. Id. at 20. Plaintiff testified he believed another inmate, Dewayne McKinney, may have placed the cuffs on Plaintiff. Id. Plaintiff contends, at some point during the altercation, he believes Defendant Lamb pressed his knee against Plaintiff's face. Id. at 19.

After being subdued, Plaintiff was placed in a restraint chair for about an hour, during which jailers allowed his mother to visit him in an attempt to calm him. Id. at 23. During these events, Defendant Riner did not make physical contact with Plaintiff, except retrieving the restraint chair and assisting Defendant Lamb in placing Plaintiff in the chair. Id. at 21, 23.

Plaintiff was allowed to see a doctor after two days. Id. at 27. The doctor did not prescribe Plaintiff with anything for his alleged injuries. Id. at 28. Defendant Clayton did,

---

[3] Defendant Lamb's affidavit describes the event as occurring on April 13, 2016, rather than September 13, 2016. Doc. 64-3 at 1. This is unquestionably a typographical error, as all parties agree the incident in question occurred on September 13, 2016.

3

however, give Plaintiff some antibiotic ointment.  Id.  In his deposition, Plaintiff said of the medical care at Emanuel County Jail, "If I fill out a form they will see me.  It may be a couple days, but every one I fill out, they have seen me."  Id. at 43.  Plaintiff also stated Defendant Stephens was not directly involved in the incident, and he does not believe Defendant Stephens was contacted about the incident.  Id. at 42.

The Emanuel County Jail has no record of Plaintiff submitting a grievance or any appeals related to this incident or the subsequent medical care.  Doc. 64-4 at 1.  In his Response to Defendants' Motion for Summary Judgment, Plaintiff states he "did assert a grievance to Officer Sam on or around September 20, 2016."  Doc. 67 at 2.

## DISCUSSION

In their Motion, Defendants argue Plaintiff's claims are barred by the Prison Litigation Reform Act's ("PLRA") exhaustion requirement, as Plaintiff did not exhaust all administrative remedies before filing suit.  Doc. 64-1 at 22.  Defendants argue they are entitled to summary judgment, as Defendants Lamb and Riner did not use excessive force in violation of Plaintiff's Eighth Amendment rights.  Doc. 64-1 at 3–12.  Defendants then argue they are entitled to summary judgment on Plaintiff's deliberate indifference claims, as he did not have a serious medical need, and no Defendant was deliberately indifferent.  Id. at 14–17.  Defendants also argue Defendant Stephens cannot be held liable because he was not directly involved, and § 1983 does not allow for suits based upon supervisory liability.  Id. at 19–20.  The Court addresses these arguments in turn.[4]

---

[4] Defendants raise additional arguments, but I find the arguments described here warrant summary judgment in Defendants' favor on all claims.  Therefore, it is unnecessary to address Defendants' other arguments.

4

I.      **Plaintiff's Exhaustion of Administrative Remedies**

Defendants argue Plaintiff's claims are barred by the PLRA's exhaustion requirement, as Plaintiff did not exhaust all administrative remedies before filing suit. Doc. 64-1 at 22. Exhaustion of administrative remedies is not ordinarily the proper subject for summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Bryant v. Rich, 530 F.3d 1368, 1374–75 (11th Cir. 2008). Accordingly, courts should treat exhaustion as having been raised under Federal Rule of Civil Procedure 12(b), then subject it to the rules and practices applicable to the most analogous Rule 12(b) motion. Id. at 1375–76. When assessing issues of exhaustion, it is proper for a judge to consider facts outside of the pleadings and resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record. Id. at 1376. The Court will treat Defendants' failure to exhaust argument as if it were raised under Rule 12(b).

A.      **Legal Requirements for Exhaustion**

Under the PLRA, an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)). Exhaustion is a mandatory requirement, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no

matter how sympathetic the case or how special the circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to filing suit. Id.

Exhaustion must be proper, and proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)). The prison's administrative grievance policies delineate what procedural steps prisoners must follow to fully exhaust. Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison."). Proper exhaustion requires prisoners to do more than simply initiate a grievance; they must correctly follow all procedural rules set out in the institution's policy and must appeal any denial of relief through all those levels that comprise the agency's administrative grievance process. Johnson, 418 F.3d at 1159.

When deciding whether a prisoner has exhausted his remedies, the court should first consider the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict take the plaintiff's version of facts as true.  Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).  "If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74).  If the complaint is not subject to dismissal at this step, then the court should make "specific findings in order to resolve the disputed factual issues related to exhaustion."  Id. (citing Bryant, 530 F.3d at 1373–74, 1376).

### B.     Emanuel County Jail's Grievance Policy

When an inmate at the Emanuel County Jail contends his civil rights have been violated or a detention deputy has committed a prohibited act, the inmate is referred to the jail's formal grievance system.  Doc. 64-4 at 1; Doc. 64-8 at 1.  This system is made available to all inmates "to ensure the systematic and equitable review of inmate complaints."  Doc. 64-8 at 1.  Under the formal grievance provision, an inmate is to file a written grievance "within five days of discovery or when he reasonably should have discovered the incident[]" and shall include "the time, date, names of facility, staff and inmates and involved witnesses, and a narrative of the incident."  Id. at 2.  The Jail Administrator will log the complaint in the grievance log book and give the inmate a written acknowledgement of receipt.  Id.  The Jail Administrator is to order an investigation of the incident within 24 hours of receipt, and an impartial staff member will investigate and submit a written report detailing his findings and recommendation to the Jail Administrator.  Id.  In turn, the Jail Administrator will give the inmate a written response within 15 days of receipt of the grievance.  Id.  Once the inmate receives the formal response, he has three calendar days to accept the findings or appeal to the Sheriff, providing reasons for

7

his appeal and returning it to the Jail Administrator.  Id. at 3.  The Sheriff or the Chief Deputy has 10 days to review, investigate, and respond to the appeal and may: concur with the grievance coordinator's response; request further investigation, or provide his own solution.  Id.  The Jail's grievance procedures are terminated once the Sheriff or Chief Deputy responds to the appeal, at which point, the inmate "may resort to other avenues for the resolution" of his grievance.  Id.

### C.     Whether Plaintiff Exhausted Administrative Remedies

In their Motion, Defendants argue Plaintiff never filed a first level administrative grievance.  Doc. 64-1 at 22.  In support, Defendants rely on the affidavit of the Jail Administrator, Captain Jeff Brewer, who states he reviewed the records related to Plaintiff, and the Jail has no record of Plaintiff filing a grievance or appeal related to the September 13, 2016 incident.  Doc. 64-4 at 1–2.  In his Response, Plaintiff states he did "assert" a grievance concerning the September 13, 2016 incident "on or around September 20, 2016."  Doc. 67 at 1.

In applying step one of Turner, the Court must take Plaintiff's version of facts as true. Turner, 541 F.3d at 1082.  If the Court accepts Plaintiff's version as true, Plaintiff's grievance was still untimely, as jail grievance policies require a detainee to file a grievance within five days of the underlying incident, and Plaintiff claims he filed his grievance seven days after the incident.  Doc. 64-8 at 2.

Even if the Court were to construe "on or around" to mean Plaintiff might have filed his grievance within five days of the incident (a rather implausible construction, on its own), the Court would still find Plaintiff failed to exhaust at step two.  In step two of Turner, the Court must make specific findings of fact.  Turner, 541 F.3d at 1082.  Defendants, in support of their exhaustion ground, rely on the sworn affidavit of Captain Jeff Brewer, who states the Emanuel

8

County Jail has no record of Plaintiff "filing a grievance [or any appeal] related to the incident that occurred on September 13, 2016." Doc. 64-4 at 2. As noted, Plaintiff merely states in an unsworn response he "asserted" a grievance on or around September 20, 2016, but he provides no other evidentiary support. On this basis alone, the Court would find, as a factual matter, that he did not file a timely grievance. Even if the Court were to scour the record for other evidence of exhaustion, Plaintiff would still come up short, as his self-serving statements about exhaustion are inconsistent. For example, in his Complaint, Plaintiff states he wrote a grievance on September 13, 2016 and gave it to a corrections officer named "Sam." Doc. 1 at 4. But once under oath at his deposition, Plaintiff claimed he filed a grievance on September 16, 2016, but prison officials ignored it, and he never received a response. Doc. 64-9 at 30–33. Then, when pressed on the issue through Defendants' Motion, Plaintiff changes his story again and states that he "asserted" a grievance "on or around September 20, 2016." Doc. 67 at 1. Plaintiff's shifting and inconsistent narrative weighed against the sworn affidavit of the Emanuel County Jail Administrator, leads the Court to conclude, as a factual matter, that Plaintiff did not file a timely grievance. Thus, I find Plaintiff failed to exhaust his administrative remedies. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' converted Motion to Dismiss.[5]

## II.     Motion for Summary Judgment

### A.     Standard of Review

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the

---

[5]    Although this Recommendation, if adopted, would fully dispose of Plaintiff's claims, I, nonetheless, address Defendants' additional arguments for the benefit of completeness.

9

nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." See Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).

### B.     Whether Defendant Lamb Violated Plaintiff's Eighth Amendment Rights

Defendant Lamb argues he did not violate Plaintiff's Eighth Amendment rights because any force he used was not excessive. Doc. 64-1 at 3. The Eighth Amendment governs the amount of force that prison officials are entitled to use against inmates.[6] Campbell v. Sikes, 169

---

[6]     It appears Plaintiff was held in Emanuel County Jail as a result of a parole violation from an

10

F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). To satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the official acted with a "sufficiently culpable state of mind." Sims, 25 F.3d at 983 (citing Hudson, 503 U.S. at 8). "The core judicial inquiry . . . is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37, 39 (2010) (citation and internal quotations omitted) (holding that there is no "significant" or "non-de minimis" threshold injury requirement).

In order to determine whether the official used force maliciously and sadistically to cause harm or in good faith to restore order, courts consider the following factors: (1) the need for the exercise of force; (2) the relationship between the need for force and the amount of force applied; (3) the extent of injury inflicted on the inmate; (4) the extent of the threat to the safety of staff and other inmates; and (5) any efforts taken to temper the severity of a forceful response. Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009). These factors are viewed from the correctional officer's point of view based on the facts known at the relevant time, and courts are to "give a wide range of deference to prison officials acting to preserve discipline and security." Id. Deference, however, "is not absolute and does not insulate from review actions taken in bad faith or for no legitimate purpose." Id. (citing Ort v. White, 813 F.2d 318, 322 (11th Cir. 1987)).

---

existing sentence. Doc. 1 at 1. Thus, the Court assesses his excessive force and deliberate indifference to medical needs claims under the Cruel and Unusual Punishment Clause of the Eighth Amendment, which applies to convicted prisoners. Whitley, 475 U.S. at 327. .

In this case, Plaintiff refused to follow the instructions of jailers and physically resisted attempts to restrain him and relocate him to a new cell. Doc. 64-3 at 1; Doc. 64-9 at 18. When Plaintiff became obstreperous, Defendant Lamb was called for assistance. Doc. 64-3 at 1. When Defendant Lamb arrived, he was brandishing a taser. Doc. 64-9 at 16. After Defendant Lamb arrived, Plaintiff continued to question Defendant Lamb about his instructions and to resist complying with the instructions. Id. at 17–18. Due to Plaintiff's recalcitrance, Defendant Lamb placed his hands on Plaintiff, either to direct Plaintiff to another cell block or to restrain him. Id. at 33–34. Plaintiff continued his refusal and grabbed the cell door handle to resist. Id. Defendants Lamb and McKinney (another inmate) then subdued Plaintiff by forcing him to the ground. Id. at 19–20. The takedown occurred in one single motion. Id. at 20. Ultimately, Defendants forced Plaintiff's hands behind his back, over Plaintiff's resistance, and placed cuffs on Plaintiff. Id. Plaintiff admits he was angry and resisted Defendants' efforts to cuff him. Id. at 20. Plaintiff testified he believed another inmate, McKinney, may have placed the cuffs on Plaintiff. Id. Plaintiff contends, at some point during the altercation, Defendant Lamb pressed his knee against Plaintiff's face. Id. at 19.

Plaintiff argues he was simply "questioning" Defendants Lamb and Riner's orders to transfer to B-Block. Id. at 16–18. By repeatedly questioning Defendant Lamb's lawful instructions to move to another cell block, and doing so in a recalcitrant manner, Plaintiff was overtly refusing to comply with Lamb's orders. Proportional use of force guards use to subdue an inmate who refuses to comply with orders does not violate the Eighth Amendment. Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008) (finding the use of pepper spray to subdue an unruly pretrial detainee who had twice ignored jailer's instructions to return to his cell was not excessive force under the Fourteenth Amendment), *overruled on other grounds, as recognized by*

Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990). "Prison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly they are not required to do so where an inmate repeatedly fails to follow those orders." Danley, 540 F.3d at 1307.

Here, Plaintiff was refusing orders and physically resisting, at which point Defendant Lamb used proportional force to subdue him. After going to the ground, Defendant Lamb did not kick, punch, or otherwise inflict intentional pain upon Plaintiff. This was a valid attempt to restore order, where the application of force was proportional to the need. When Defendant Lamb arrived at the scene, he was brandishing a taser. Doc. 64-9 at 17. In applying force, however, Defendant Lamb opted to physically restrain Plaintiff, and in doing so, tempered the severity of his response. Id. at 33–34. In his affidavit, Defendant Lamb said there were several unrestrained inmates in the general vicinity, a fact Plaintiff has not disputed. Doc. 64-3 at 1. The Court must assess all of these factors in their totality and determine the reasonableness of the force applied through the eyes of a reasonable guard on the scene. Graham v. Connor, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."); see also Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). Defendants' conduct—grabbing Plaintiff, forcing him to the floor, kneeing him in a scuffle, and handcuffing him—does not contain the type of malice or sadism which violates Plaintiff's Eighth Amendment rights.

It is also clear from the undisputed facts Defendant Lamb did not utilize excessive force by placing Plaintiff in the restraint chair for a brief period of time. It is undisputed that Plaintiff was in the restraint chair "about an hour." Doc. 64-9 at 23–24. It also is undisputed that Defendants repeatedly checked on Plaintiff immediately after the incident and continued to check on him every seven to ten minutes, which undermines any inference of malicious intent. Id. What is more, Defendants allowed Plaintiff's mother direct access to him. Id. Placing Plaintiff in a restraint chair in these circumstances for this brief period of time—particularly following Plaintiff's admitted outbursts, noncompliance, and physical resistance—does not constitute excessive force. Scroggins v. Davis, 346 F. App'x 504, 505 (11th Cir. 2009) (finding no excessive force where inmate was placed in restraint chair for three hours and fifteen minutes); Williams v. Burton, 943 F.2d 1572, 1576 (11th Cir. 1991) (rejecting claim that putting a dangerous inmate in four-point restraint for twenty-eight and one-half hours was excessive force and explaining "the courts give great deference to the actions of prison officials in applying prophylactic or preventative measures intended to reduce the incidence of riots and other breaches of prison discipline"). Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion as to this claim.[7]

### C.  Whether Defendant Riner Violated Plaintiff's Eighth Amendment Rights

Plaintiff states Defendant Riner had no physical contact with Plaintiff at any point prior to placing him in the restraint chair. Doc. 64-9 at 21. "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive

---

[7]  Plaintiff alleges Defendant McKinney (an inmate trustee) participated in the September 13, 2016 takedown, assisting Defendant Lamb. The allegations against Defendant McKinney involve the same, or less serious, allegations of force. Thus, the grant of summary judgment on the excessive force claim against Defendant Lamb necessarily warrants dismissal of the excessive force claim against Defendant McKinney. Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's excessive force claim against Defendant McKinney.

14

force can be held personally liable for his nonfeasance." Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000). A successful claim requires "facts showing the necessity or real opportunity for the defendant-officers to intervene in a fellow officer's unlawful conduct." Keating v. City of Miami, 598 F.3d 753, 764 (11th Cir. 2010). When events occur so quickly that the officer cannot intervene in the use of excessive force, he or she is not liable for another's constitutional violation. Fils v. City of Aventura, 647 F.3d 1272, 1290 n.21 (11th Cir. 2011) (citing Brown v. City of Huntsville, 608 F.3d 724, 740 n.25 (11th Cir. 2010)). Moreover, if there is no underlying use of excessive force, there is no obligation to intervene. Crenshaw v. Lister, 556 F.3d 1283, 1294 (11th Cir. 2009).

Plaintiff's claim against Defendant Riner fails because, as explained above, Defendant Lamb's takedown of Plaintiff was not an excessive use of force, and, therefore, Defendant Riner had no duty to intervene. Additionally, because Defendant Lamb's takedown of Plaintiff all happened in a single motion, there would not have been adequate time for Defendant Riner to intervene. Accordingly, Defendant Riner did not violate Plaintiff's Eighth Amendment rights. Thus, I **RECOMMEND** the Court **GRANT** Defendants' Motion as to this claim.

> **D. Whether Defendants Lamb, Riner, Brown, and Clayton were Deliberately Indifferent to Plaintiff's Serious Medical Needs**

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer, 511 U.S. at 832. In the medical care context, the standard for cruel and unusual punishment is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Id. at 828. To prove a deliberate indifference to medical care claim, a

prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id.

Under the second, subjective element of a deliberate indifference claim, the Eleventh Circuit Court of Appeals has consistently required "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Thus, this component requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).

The final element of a deliberate indifference claim requires a plaintiff to show "the constitutional violation caused the injury." Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003) (citing Marsh v. Butler County, 268 F.3d 1014, 1028 (11th Cir. 2001)). Causation "can be shown by personal participation in the constitutional violation." Goebert, 510 F.3d at 1327. Put differently, if defendants were deliberately indifferent to plaintiff's serious medical needs, their respective indifference must have caused plaintiff's continued suffering.

Plaintiff contends he was handcuffed so tightly he lost sensation in his hands and shoulders and had visible wounds on his hands. Doc. 18 at 1–2. Additionally, Plaintiff alleges his face was swollen due to having been kneed in the eye and his face rubbed into the ground during the assault. The Eleventh Circuit has recognized that superficial, nonserious injuries from handcuffing do not qualify as "serious" medical needs. Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188, n.22 (11th Cir. 1994) (stating that a delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation), *overruled in part on other grounds by* Hope v. Pelzer, 536 U.S. 730 (2002); see also Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (finding a prisoner's swollen, bleeding wrists from handcuffs that were too tight "do not constitute such a 'serious medical need' that any minor delay caused by [prison officials] in delivering [inmate] to the care of medical personnel could be construed as 'deliberate indifference'"). As stated, a medical need can be deemed serious if it is one that "has been diagnosed by a physician as mandating treatment." Hill, 40 F.3d at 1187.

Thus, the undisputed material facts show Plaintiff did not have a serious medical need to which Defendants were indifferent. Moreover, Plaintiff was examined by medical providers relatively soon after the incident and was treated with over-the-counter pain medication and antibiotic ointment; thus, the undisputed facts show Defendants did not disregard Plaintiff's medical needs (serious or otherwise). Doc. 18 at 2; Doc. 64-9 at 30. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion as to these claims.

### F. Whether Defendant Sheriff Tyson Stephens was Deliberately Indifferent to Plaintiff's Serious Medical Needs

In his Response to Defendants' Motion for Summary Judgment, Plaintiff makes it clear that his claim against Defendant Sheriff Tyson Stephens is based solely on a theory of

17

"supervisory liability." Doc. 67 at 3. Indeed, Plaintiff testified Defendant Stephens was not directly involved, nor does he believe Defendant Stephens was even contacted about the September 13, 2016 incident. Doc. 64-9 at 42.

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

Plaintiff only seeks to hold Defendant Stephens liable based on his role as a supervisor. Plaintiff has not pointed to any personal involvement by Defendant Stephens in the September 13, 2016 incident, and, in fact, Plaintiff testified under oath he does not believe Defendant Stephens was even informed about the incident. Based on these undisputed facts, Defendants Stephens is entitled to judgment as a matter of law on Plaintiff's claim against him. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion as to Plaintiff's claim against Defendant Stephens on this basis.

### III.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[8]  Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.   Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.   28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).   Good faith in this context must be judged by an objective standard.   Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).   A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.   See Coppedge v. United States, 369 U.S. 438, 445 (1962).   A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.   Neitzke, 490 U.S. at 327; Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).   An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."   Preslicka, 314 F.3d at 531 ;see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action and Defendants' Motion, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.   Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth below, I **RECOMMEND** the Court **GRANT** Defendants' Motion and **DISMISS** Plaintiff's Complaint in its entirety, **DIRECT** the Clerk of Court to enter

---

[8]    A certificate of appealability is not required in this § 1983 action.

the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Plaintiff *in forma pauperis* status on appeal**.**

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.   Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.   Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).   A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.   Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.   Appeals may be made only from a final judgment entered by or at the direction of a District Judge.   The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 6th day of March, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA